## Edward Keyes v. Anton Binkert et al.

1.  CONSTRUCTION OF CONTRACTS—*Agreements for Deeds—Damages.*— Upon an agreement to convey a tract of land by a good and sufficient deed, if the obligation is conditional only upon payment of the price at the proper time, the deed should be effectual to convey a good title, free from incumbrance, and upon a failure to deliver such a deed, the measure of damages will be the difference between the price agreed on and the value of the property at the time it should have been conveyed.

2.  SAME—*Agreement for Warranty Deed.*—Under a contract for the sale of real estate, acknowledging the receipt of first payment and conditioned for the payment of the balance upon the delivery of a good and sufficient warranty deed as soon as the vendee had the title examined and found good, conditioned, also, that if the title should not prove good, the payment made should be refunded, but if the vendee failed to perform on his part, it should be forfeited, *it was held* that the vendors were not bound to deliver the deed until after the vendee had had the title examined and found good, in which case the delivery of a warranty deed would be a compliance with the contract, though it did not in fact convey a good title free from incumbrance; and if it was not so found and the vendors could not convey a good title, the measure of damages was the amount of the part payment made at the execution of the agreement.

3.  VARIANCE—*One Case by the Declaration, Another by the Proofs.*— The plaintiff's case, as made by his declaration, was that the defendants had a good title to premises which, it was alleged, they had agreed to convey but would not convey as agreed; but the case as made by the proofs was that they did not have a good title and could not convey one as agreed.  *Held*, a variance.

**Memorandum.**—Assumpsit in the Circuit Court of Adams County; the Hon. OSCAR P. BONNEY, Judge, presiding.  Declaration on an agree-

# 48 APPELLATE COURTS OF ILLINOIS.

ment for the sale of real estate. The pleas are stated in the opinion; trial by the court; judgment for the defendants; appeal by plaintiff. Heard in this court at the November term, 1894, and affirmed. Opinion filed February 11, 1895.

APPELLANT'S BRIEF, L. H. BERGER, ATTORNEY.

An agreement to make a good and sufficient deed of warranty is to be construed as an agreement to make a deed that shall pass a good title. The agreement refers to the title to be conveyed and not to the form of the deed. Chute v. Robinson, 2 Johns. (N. Y.) 595; Judson v. Wass, 11 Johns. (N. Y.) 526; Everson v. Kirtland, 4 Paige (N. Y.) 638.

There is in every executory contract for the sale of lands an implied undertaking to make a good title and the under taking is not satisfied by a deed good and sufficient in form where the title is incumbered, or otherwise defective. Penfield v. Clark, 62 Barb. (N. Y.) 591; Pomeroy v. Drury, 14 Barb. 418; Atkins v. Bahrett, 19 Barb. (N. Y.) 639; Everson v. Kirtland, 4 Paige Ch. (N. Y.) 638; Brown v. Cannon, 5 Gilm. 174; Bishop v. Newton, 20 Ill. 175; Murphy v. Lockwood, 21 Ill. 611; Gehr v. Hagerman, 26 Ill. 438; Morgan v. Smith et al., 11 Ill. 189; Wallace v. McLaughlin, 57 Ill. 56.

APPELLEES' BRIEF, JOHN H. WILLIAMS, ATTORNEY.

It is a well recognized rule for the construction of written contracts that the intention of the parties must control, and that this intention must be gathered from the language of the contract. Walker v. Tucker, 70 Ill. 527.

And further that all the words of the contract must be considered in determining the intention of the parties. McCarthy v. Howell, 24 Ill. 341.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

The declaration here was in one count, for failure of appellees to deliver a deed according to a contract therein set forth *in haec verba,* as follows:

Office of Binkert & Cruttenden, 214 North Sixth Street.
Quincy, Ill., October 16, 1891.

Received of Edward Keyes twenty-five dollars ($25), as part payment toward the purchase of the following described real estate : The north one hundred and eight (108) feet of the east half of block eighteen (18), of Alstyne's addition to the city of Quincy, situated in the county of Adams and State of Illinois, which is hereby bargained and sold to the said Edward Keyes for the sum of eight hundred and sixty-four ($864) dollars; eight hundred and thirty-nine ($839) dollars more to be paid on the delivery of a good and sufficient warranty deed of conveyance for the same within ten days from this date, or as much sooner as the deed is ready for delivery after he has had the title examined and found good. Should the title to the property not prove good, then this $25 to be refunded. But should the said Edward Keyes fail to perform this contract on his part. promptly at the time and in the manner above specified (time being the essence of this contract), then the above twenty-five ($25) dollars shall be forfeited by him as liquidated damages and above contract shall be and become null and void.

BINKERT & CRUTTENDEN,    (SEAL.)
EDWARD KEYES.    (SEAL.)

It avers that the " plaintiff did on the 21st day of October 1891, find the title to said premises to be good, and on the same date, at the office of said defendants, tender unto said defendants the further sum of $839;" that he "then and there demanded of said defendants a good and sufficient deed of warranty for said real estate; " that " the defendants have refused to deliver" such deed to him, and that "the time for conveying said real estate to him has long since elapsed."

Yet he has always been ready to accept, and is willing to accept a good and sufficient warranty deed of conveyance for said real estate and to pay for the same at the price aforesaid, to wit, $839, at the office of Binkert & Cruttenden aforesaid. But the defendants did not nor would, within

the time specified in said agreement, after the making of said promise, or at any time afterward, deliver unto plaintiff a good and sufficient warranty deed of conveyance for the premises described in said agreement, but refused so to do."

Defendants pleaded *non assumpsit* and four special pleas, of which the first was stricken out and the second and fourth were held insufficient on demurrer.

The third was as follows: "*Actio non*, because they say that after the supposed tender of $839 by said plaintiff to said defendants, and the demand by him of deed of warranty from them for the premises in said declaration described, as alleged in said declaration, and on the 22d day of October, A. D. 1891, the said defendants, with their wives, executed and acknowledged a deed of general warranty to said plaintiff for the property described in the agreement set out in said declaration, and within ten days from the date of said contract, and before this suit was brought, notified said plaintiff that they were ready and willing to deliver said deed to him upon the payment of said sum of $839, and requested him to pay said sum of money so tendered and receive said deed, but said plaintiff refused to accept said deed and said that he would not accept said deed, and has not since that time paid or offered to pay said sum of $839, nor has he offered to accept or accepted said deed, although said defendants have been at all times ready and willing to deliver said deed upon the payment to them of said sum of $839, and are now ready and willing, and hereby offer and tender to said plaintiff said deed, and bring the same into court to be delivered to said plaintiff upon the payment by him to said defendants of said sum of $839; and this they are ready to verify; wherefore they pray judgment," etc.

To this plea plaintiff replied that "the said defendants did not in manner and form as set out in said plea tender a good and sufficient deed of warranty, and of this he puts himself upon the country," etc.

A jury having been waived, the issues so joined were tried by the court and found for the defendants, a new trial

denied and judgment entered upon the finding, from which this appeal was taken.

Plaintiff proved the execution of the agreement set out in the declaration, and tender of $839 by him to defendant Binkert on October 21st, of whom he then demanded a deed, which Binkert refused to give and said they could not give.

He then offered in evidence a paper called a transcript or abstract of title to the north 108 feet of the east half of block 18, in Alstyne's addition to the city of Quincy, which had been identified by the recorder of deeds of Adams county as having been made by him from the records that morning, and which he testified was correct and true, for the purpose of showing, as was stated by counsel, that the title to the property in question was in Edward Prince throughout the month of October, 1891.

This paper is not shown in the abstract of the record, but we copy from the transcript its heading and commencement :

"Abstract of east half of block 18, Alstyne's addition to Quincy.    July 12, 1879, date of instrument.    July 29, 1879, date of record.    D. A. Chapp et al. to Edward Prince.    Book 91, page 606.    Lots 1, 2, 3, 5, 8, 10, 11, 12 and 13 in block 18, Alstyne's Add.    War. Deed.    Consideration, $3,693.25.

September 16, 1889, date of instrument; September 17, 1889, date of record.    Edward Prince to German Ins. & Sav. Inst.    Book 42, page 119.    Mortgage above described lots, consideration $7,500.    This mortgage is released on margin October 7, 1889, book 42, page 119."

Then follow similar memoranda of deeds and mortgages, ten in all, from Prince and his grantees, the last of which is of a warranty deed of March 22, 1894, from him to A. Cullen, all purporting to convey portions of said block 18.

On objection by defendants, the paper so offered was excluded by the court, and plaintiff then rested his case.

Defendant Binkert then testified that almost immediately after the contract, which was made during his absence by his son, was executed, he called on plaintiff and told him there was a mistake of $2 a foot in the price therein stated,

making a difference of $216; that they could not make a deed for that price; that he would do whatever was right in the matter and offered to return him the $25, if he would give up the contract. They had some talk about a stable on the premises for which he was to pay extra, and no definite conclusion was then reached. When plaintiff made the tender and demanded the deed, witness again told him they could not make it—that Col. Prince would not sell the property for $8 a foot.

He further testified that afterward, on the same day, he and his co-defendant, with their wives, executed the deed then shown him.

George Binkert, his son, then testified that on the next day, or the next but one after the tender, he called on plaintiff to tell him the deed was ready, and did tell him so, and that he should call for it with his money at the office. Plaintiff asked him who it was from. He answered, from Binkert & Cruttenden. Plaintiff then said he didn't want a deed from them—that they had no title. Witness then drew the $25 plaintiff had paid, and said "if they have not got a good title here is your $25, give us our contract back." Plaintiff said "no, he wouldn't do that," to which witness replied "all right" and left him. He also stated that the deed referred to was the one his father had identified; that it had been in defendant's safe ready to be delivered ever since it was executed; that plaintiff had never called for it or offered to pay for it, and had frequently told witness, since he was notified that it was ready for him, that he did not want a deed from the defendants. They then offered it in evidence and after examination by the court it was admitted over the specific objection that it was immaterial, because executed by strangers to the title. It bore date of October 21, 1891, was acknowledged on the 22d, before George A. Binkert, notary public, and was in the statutory form for a warranty deed purporting to convey to plaintiff the premises in question as described in the agreement.

In rebuttal, plaintiff testified that neither the defendant,

Binkert, nor his son, ever tendered him a deed for the prop·
erty described in the contract. He then offered from book
91 of the records of deeds of the recorder's office, the
record of a warranty deed from Desire A. Clapp and George
A. Clapp, her husband, to Edward Prince, of lots 1, 2, 3, 5,
6, 10, 11, 12 and 13, in block 16 of Alstyne's addition to the
city of Quincy, in Adams county, Illinois, dated July 12,
1879, which was admitted by the court, over objection.
And this was all the material evidence in the case.

The argument for appellant assumes that the only ques-
tion here involved is whether a contract to deliver a good
and sufficient deed requires one that actually conveys the
title. We think the antecedent question is whether the con-
tract here shown is such. If the obligation to deliver it
is conditioned only upon payment of the price at the
proper time, it should be effectual to convey a good title
free from incumbrance. Tyler v. Young, 2 Scamm. 144;
Conway v. Case, 22 Ill. 127; Eggers v. Bush, 54 App. 279.
And upon failure so to deliver such a deed, the measure of
damages would be the difference between the price agreed
on and the value of the property at the time it should
have been so conveyed. But that was not the sole condi-
tion in this case. By the terms of the contract appellees
were not bound to deliver the deed until after appellant
" had the title examined and found good." Nor did'it
leave them liable, in case it should be found they could
not convey a good title to that measure of damages, but
expressly provided that " the $25 was to be refunded;"
thus excluding all right to claim other damages. This
would seem to show the intention of the parties was
that if appellant, upon his own examination, should be sat-
isfied with the title, he would accept the deed, relying on
the covenants, for a breach of which the damages would be
measured by quite another rule.

We understand the Supreme Court to so hold in the case
entitled Brizzolara et al. v. Mosher et al., 71 Ill. 41. From
the opinion it would appear to be erroneously so entitled;
that Brizzolara & Botto were complainants below and ob-

tained a decree according to the prayer of the bill, upon which the defendants sued out a writ of error.

The defendants below, plaintiffs in error, had put upon record a contract of complainants, as follows:

CHICAGO, Sept. 26, 1872.

Received of William H. Mosher $200, as earnest money, to be applied toward the purchase of the following premises (described), hereby bargained and sold to the said William H. Mosher for the price of $1,800; $5,800 more to be by him paid upon the delivery of a good and sufficient deed for the same within thirty days from date, or as soon as abstract of title can be brought down; papers to be dated Oct. 1, 1872, with release of dower, after title has been examined and found good; and the balance, $6,000 in one year, eight per cent interest, $6,000 in two years, eight per cent interest, to be secured by trust deed on the premises. Should the title to the property not prove good, then the payment to be refunded.

LOUIS BRIZZOLARA,
GUPPE BOTTO,
By D. COLE & SON, Agents.

Complainants filed their bill to remove this alleged cloud upon their title. It appeared from a previous proposal of July 8, 1872, that the premises were incumbered by two mortgages for $4,666.60 each, due respectively in one and two years from March, 1872, and that the purchaser was to pay $8,663.68 in cash, and assume the mortgage debts; but the cash payment was too large, and the contract above copied was made. Complainants tendered a general warranty deed and demanded payment, which was refused, and they then tendered the earnest money, which was also refused. Upon this state of facts they obtained the relief sought and the decree was affirmed. The Supreme Court held that, notwithstanding these incumbrances, the tender of the warranty deed was a compliance with the contract; that they "nowhere proposed to convey a perfect title, but to make a deed with covenants of general warranty;" that "they were to take up those notes as they matured," but "the purchaser was to rely on their warranty deed."

They say " the only question is, what is the true construction of this contract," and declare it to be " a clear case for the complainants."

The similarity in every material particular between the contracts in that case and this is at once apparent, and we see no way to evade the force and effect of that decision. Here the declaration expressly averred that the plaintiff had examined the title and found it good, that is, good in the defendants ; for no examination was required to find it was good in somebody. The object of it was to find whether it was good in the parties of whom he was to get the deed, and he had no contract for a deed from anybody but the defendants. Being found good in them he could have no doubt that the deed they offered to deliver would have made it good to him. It is not denied that it was a proper warranty deed, nor that they had it ready and offered to deliver it within the time specified in the contract. He says they did not " tender " it. But that was unnecessary, except to put him in default, which they are not seeking to do. It was for him to show them in default, and yet he does not pretend that he tendered to them the balance of the price and demanded the deed on the last day that the contract allowed them for delivery. Nor is his failure to be excused by the fact that upon a tender and demand at an earlier day they told him they could not make it for that price, stated by mistake, especially since they notified him in the meantime that the deed was then ready for him. The declaration in effect admits it was to be delivered at their office, and alleges that he was willing, during all the time, to accept a good and sufficient deed there. Then, if they " nowhere proposed to convey a perfect title, but to make a deed with covenants of general warranty," as in the case above cited, it appears that they were able, ready and willing, and offered to comply with the contract on their part, and he failed to do so on his.

On this the judgment might rest. But if this is not the true construction of the contract, it is to be observed that while appellant's case, as made by his declaration, is that

appellees had a good title, but would not convey it as agreed, the only one attempted to be made by his proof is that they had not a good title and could not convey it as agreed. Had the attempt been successful he would not have been entitled to recover in this action.

And since it was not allowable to contradict the averment of his declaration, and make a case so different from the one he alleged, any evidence to support it would have been properly excluded on that ground alone. But the opinions of his attorney and of the recorder, the abstract of title, so-called, and the record of the deed from the Clapps to Prince, were of themselves, severally or jointly, incompetent to prove that for which they were offered.

The views above expressed dispose of the questions upon the instructions. Perceiving no error in the record, the judgment will be affirmed.